UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED
JAN 29 2013

| UNITED STATES OF AMERICA, | * | CR 12-30144-RAL |
| --- | --- | --- |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING MOTION TO |
| | * | DISMISS INDICTMENT |
| ROYCE GREGORY LOUDNER, | * | |
| Defendant. | * | |

In July 1992, Defendant Royce Gregory Loudner was convicted by a jury of abusive sexual contact and aggravated sexual abuse, 18 U.S.C. §§ 1153, 2244(a)(1), 2245, and 2241(c), in the United States District Court for the District of South Dakota. 92-CR-30016-01, Doc. 1. The Honorable Donald J. Porter sentenced Loudner to 240 months in custody followed by three years of supervised release. 92-CR-30016-01, Doc. 2. On September 19, 2012, Loudner was indicted for failing to register as a sex offender as required by the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913. CR-12-30144, Doc. 1. Loudner moves to dismiss the indictment on two bases: that 42 U.S.C. § 16913(d) violates the non-delegation doctrine, and that the SORNA registration requirements are unconstitutional under the Commerce Clause. Doc. 21.

I. **Non-Delegation Doctrine**

SORNA, enacted in July of 2006, makes it a crime for a person "who is required to register under the [Act]" and who "travels in interstate or foreign commerce" to knowingly "fai[l] to register or update a registration . . . ." 18 U.S.C. § 2250(a). Congress delineated SORNA's registration requirement in 42 U.S.C. § 16913 and granted the Attorney General "the authority to specify the applicability of the [registration] requirements of this subchapter to sex offenders convicted before the enactment of this chapter." 42 U.S.C. § 16913(d). In February of 2007, the Attorney General

announced an Interim Rule stating that the "requirements of [SORNA] apply to all sex offenders including sex offenders convicted of the offense for which registration is required prior to enactment of [the] Act." 28 C.F.R. § 72.3. In December of 2010, the Attorney General issued a Final Rule, which became effective on January 28, 2011. See Applicability of the Sex Offender Registry Act, 75 Fed. Reg. 81849-50 (Dec. 29, 2010) (to be codified at 28 C.F.R. pt. 72). "By this rule, the Department of Justice [finalized] an interim rule specifying that the requirements of [SORNA] . . . apply to all sex offenders, including sex offenders convicted of the offense for which registration is required before the enactment of [the] Act." Id.

Loudner, a pre-SORNA offender, filed a motion to dismiss his indictment contending that Congress's grant of authority to the Attorney General to determine the retroactivity of SORNA violates the non-delegation doctrine because 42 U.S.C. § 16913(d) lacks any standard or intelligible principle to guide the Attorney General. Doc. 21; Doc. 22. Every other federal court of appeals and district court to directly address a SORNA non-delegation challenge has rejected it. See, e.g., United States v. Felts, 674 F.3d 599, 606 (6th Cir. 2012) ("Congress's delegations under SORNA possess a suitable intelligible principle and are well within the outer limits of the Supreme Court's nondelegation precedents.") (internal quotation marks and citations omitted); United States v. Rogers, 468 F. App'x 359, 362 (4th Cir. 2012) ("The Attorney General's exercise of discretion is adequately cabined by [SORNA's] clear statement of purpose."); United States v. Guzman, 591 F.3d 83, 93 (2nd Cir. 2010) (rejecting SORNA non-delegation challenge and noting that Attorney General's authority under SORNA is "highly circumscribed"); United States v. Whaley, 577 F.3d 254, 264 (5th Cir. 2009) ("SORNA's statement of purpose to 'establish a comprehensive national system' of sex offender registration to 'protect from sex offenders and offenders against children,' 42 U.S.C. § 16901, is an

intelligible principle that guides the Attorney General in exercising his discretion.") (internal marks omitted); United States v. Ambert, 561 F.3d 1202, 1213 (11th Cir. 2009) ("We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in [SORNA]."); United States v. Dixon, 551 F.3d 578, 583-84 (7th Cir. 2008) (holding non-delegation argument had no merit), rev'd on other grounds by Carr v. United States, 130 S.Ct. 2229 (2010); United States v. Mee, No. 5:11-CR-101, 2012 WL 1638436, at *5-6 (D. Vt. May 9, 2012); United States v. Goodwin, No. 11-20036, 2012 WL 984268, at *2-3 (C.D. Ill. Mar. 22, 2012); United States v. Sudbury, No. 11-CR-5536, 2012 WL 925960, at *2-4 (W.D. Wash. Mar. 19, 2012); United States v. Kuehl, No. 11-CR-3053, 2012 WL 844321, at *3 (N.D. Iowa, Mar. 12, 2012); United States v. Lunsford, No. 11-CR-00175-01, 2012 WL 828039, at *5-6 (W.D. Mo. Feb. 28, 2012); United States v. Rand, No. 11-CR-2727, 2012 WL 195017, at *4 (W.D. Tex. Jan. 23, 2012); United States v. Sherman, 784 F. Supp. 2d 618, 622 (W.D. Va. 2011); United States v. Cotton, 760 F. Supp. 2d 116, 134-35 (D. D.C. 2011).

This Court likewise has concluded that Congress provided appropriate "intelligible principles" to guide the Attorney General's discretion under § 16913(d) and that § 16913(d) does not contravene the non-delegation doctrine. United States v. King, No. 12-CR-30021, 2012 WL 2308724, at *1 (D.S.D. June 18, 2012). Congress "has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914, and 2250 that constrict the Attorney General's discretion to a narrow and defined category." Ambert, 561 F.3d at 1213. Therefore, there is no violation of the non-delegation doctrine in having registration requirements applicable to pre-SORNA violators like Loudner.

## II. Commerce Clause

Loudner's next argument is that the Supreme Court's decision in National Federation of Independent Business v. Sebelius, 132 S.Ct. 2566 (2012), concerning the Patient Protection and Affordable Care Act, renders the registration requirements under SORNA to be violative of the Commerce Clause. Loudner argues that National Federation precludes Congress from compelling activity under its Commerce Clause power and therefore that Congress lacks the authority under the Commerce Clause to compel sex offenders to register. Prior to National Federation, the Eighth Circuit, in United States v. Howell, 552 F.3d 709, 713-17 (8th Cir. 2009), concluded that SORNA's registration requirements are valid under the Commerce Clause and the Necessary and Proper Clause as the requirements are intended to regulate the interstate movement of sex offenders and that § 16913 "is an appropriate aid to the accomplishment of tracking the interstate movement of sex offenders." Id. at 717 (internal quotation marks omitted) (citing to United States v. Darby, 312 U.S. 100, 121 (1941)). Howell drew from the Supreme Court cases of United States v. Lopez, 514 U.S. 459 (1995) and Gonzales v. Raich, 545 U.S. 1 (2005) for its analysis. See Howell, 552 F.3d at 717.

In Lopez, the Supreme Court "identified three broad categories of activity that Congress may regulate under its commerce power." 524 U.S. at 558. The Commerce Clause empowers Congress: (1) "[to] regulate the use of the channels of interstate commerce;" (2) "to regulate and protect the instrumentalities of interstate commerce, or persons or thing in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558–59 (internal citations omitted); Howell, 552 F.3d at 714. The Supreme Court entertains four further considerations to determine whether a regulation is valid under the third

category: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) the attenuation of the link between regulated activity and interstate commerce. United States v. Morrison, 529 U.S. 598, 611-12 (2000).

The Eighth Circuit in Howell recognized that the SORNA registration requirement contains no jurisdictional element placing it within the first or second prong of Lopez and that there is little evidence that intrastate sex offender registration substantially affects interstate commerce. Howell, 552 F.3d at 715 n.4 (discussing how § 16913 "contains no jurisdictional element" as it reaches purely intrastate activity and "is not an attempt to regulate the use of channels of interstate commerce."). However, the Eighth Circuit determined that Congress's focus on the interstate movement of sex offenders was substantial enough to find SORNA valid under the Commerce Clause and the Necessary and Property Clause, and that the registration requirements of § 16913 are "a reasonable means to track those offenders if they move across state lines." Id. at 717. As such, "[c]overing the registration of wholly intrastate sex offenders is merely incidental to Congress's tracking of sex offenders in interstate commerce." Id. In Howell, the Eighth Circuit relied on the maxim that "a law does not have to be undeniably necessary to be proper." Id. at 714 (citing McCulloch v. Maryland, 17 U.S. 316, 413 (1819)). For this proposition, the Eighth Circuit drew from Justice Scalia's understanding of the Commerce Clause in Gonzales v. Raich, 545 U.S. 1 (2005) (upholding Congress's authority to regulate intrastate production and consumption of marijuana as a necessary and proper extension of Congress's authority to regulate the interstate market for the drug):

> [T]he authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that substantially affect interstate commerce. Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.
>
> . . .
>
> The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the intrastate activity does not itself "substantially effect" interstate commerce. Moreover, . . . Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. The relevant question is simply whether the means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power.

Id. at 34-37 (Scalia, J., concurring); Howell, 552 F.3d at 714-15. While doubting the constitutionality of § 16913 under the Commerce Clause alone, the Eighth Circuit in Howell concluded that "the enabling necessary and proper clause reveals the statute is constitutionally authorized." Howell, 552 F.3d at 715. This Court is bound by the Eighth Circuit's decision in Howell, which was decided under both the Commerce Clause and the Necessary and Proper Clause of the United States Constitution. The question then becomes whether National Federation abrogates or overrules Howell.

The issues in National Federation resulted in a split decision, and there is no controlling opinion on the issue of whether provisions of the Affordable Care Act violated the Commerce Clause. Chief Justice John Roberts wrote alone, finding that the individual mandate of the Affordable Care Act—in imposing a minimum essential coverage requirement under which individuals must purchase and maintain health insurance coverage— exceeded Congress's power under the Commerce Clause and the Necessary and Proper Clause, but was constitutional under

6

Congress's taxing authority. Id. at 2592, 2594. Justices Scalia, Kennedy, Thomas, and Alito filed a dissent, and Justice Thomas wrote a separate dissent, also concluding that the Affordable Care Act violated the Commerce Clause. Id. at 2644 (joint opinion of Scalia, J., Kennedy, J., Thomas, J., Alito, J., dissenting); id. at 2677 (Thomas, J., dissenting). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)). Under Marks, this Court therefore cannot read the conglomeration of the dissenting opinion of four Justices combined with the concurring opinion of the Chief Justice to constitute binding precedent interpreting the Commerce Clause. See United States v. Moore, No. 12-CR-6023, 2012 WL 3780343, at *3 (E.D.Wash. Aug. 31, 2012). Instead, this Court must apply the opinion of Chief Justice Roberts because it articulates the narrowest grounds for upholding the individual mandate. See United States v. Lott, No. 2:11-CR-099, 2012 WL 6107676, at *5, (D. Vt. Dec. 10, 2012).

In National Federation, Chief Justice Roberts acknowledged that the Commerce Clause permits Congress to regulate intrastate activities that have a substantial effect on interstate commerce but concluded that Congress may not regulate economic activity by compelling it. 132 S.Ct. at 2587 ("Our precedents recognize Congress's power to regulate classes of activities, not classes of individuals, apart from any activity in which they are engaged.") (internal quotation and citation omitted); id. at 2586 ("The power to *regulate* commerce presupposes the existence of commercial activity to be regulated.") (emphasis in original). Chief Justice Roberts reasoned that the individual mandate could not be upheld under the Commerce Clause because:

7

> The individual mandate . . . does not regulate existing commercial activity. It instead compels individuals to *become* active in commerce by purchasing a product, on the ground that their failure to do so affects interstate commerce. Construing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority. Every day individuals do not do an infinite number of things. In some cases they decide not to do something; in others they simply fail to do it. Allowing Congress to justify federal regulation by pointing to the effect of inaction on commerce would bring countless decisions an individual could *potentially* make within the scope of federal regulation, and—under the Government's theory—empower Congress to make those decisions for him.

Id. at 2587 (emphasis in original). Since "[t]he individual mandate forces individuals into commerce precisely because they elected to refrain from commercial activity," it "cannot be sustained under a clause authorizing Congress to 'regulate Commerce.'" Id. at 2591. Chief Justice Roberts also determined that the individual mandate could not be sustained under the Necessary and Proper Clause as "an integral part of a comprehensive scheme of economic regulation." Id. (internal quotation marks omitted). The Government had argued that the Supreme Court did not have to consider the effect of inactivity on interstate commerce because it was sufficient that Congress regulated commercial activity—namely the other provisions of the Patient Protection and Affordable Care Act—in a manner that required the government to regulate inactivity. Id. at 2592-93; see Raich, 545 U.S. at 22. Chief Justice Roberts rejected that argument as well. Nat'l Fed'n, 132 S.Ct. at 2592-93. The Chief Justice distinguished Raich on the grounds that the issue presented there only concerned the constitutionality of "individual *applications* of a concededly valid statutory scheme," id. at 2593 (quoting Raich, 545 U.S. at 23), whereas "[t]he individual mandate . . . vests Congress with the extraordinary ability to create the necessary predicate to the exercise of an enumerated power." Id. at 2592.

8

Chief Justice Roberts' opinion in National Federation leaves open the question of what remains of Raich and whether the rationale of the Eighth Circuit in Howell is valid. However, Chief Justice Roberts' opinion left intact Raich's key holding that Congress may regulate economic intrastate activity when doing so is a necessary component of a comprehensive interstate regulation. Raich, 545 U.S. at 22 ("[W]hen it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to 'make all Laws which shall be necessary and proper' to 'regulate Commerce . . . among the several States.'") (quoting U.S. Const., art. I, § 8). This Court is aware of three decisions post-National Federation in which federal courts have addressed whether § 19613 violates the Commerce Clause. United States v. Shoulder, 696 F.3d 922, 932 (9th Cir. 2012); Lott, 2012 WL 6107676, at *4-8; Moore, 2012 WL 3780343, at *3. Judge William K. Session, III in Lott explained best how Chief Justice Roberts' opinion in National Federation might be taken either as justifying upholding § 16913 as constitutional or as leading to a conclusion that § 16913 is unconstitutional. 2012 WL 6107676, at *4-8. Ultimately, Judge Sessions, as well as the other courts considering the constitutionality of SORNA after National Federation, upheld § 16913. Id.; Shoulder, 696 F.3d at 932; Moore, 2012 WL 3780343, at *3.

"'Proper respect for a coordinate branch of the government' requires that [a federal court] strike down an Act of Congress only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.'" Nat'l Fed'n, 132 S.Ct. at 2579 (quoting United States v. Harris, 106 U.S. 629, 635 (1882)). Here, Loudner has not "clearly demonstrated" the lack of constitutional authority for Congress to enact § 16913. Despite the issues surrounding how National Federation applies and affects the analysis of the constitutionality of § 16913, this Court remains bound by

Howell. Howell was not overruled or abrogated in National Federation and therefore remains binding in the Eighth Circuit. In concluding that Howell has not been abrogated, this Court finds important the Chief Justice's decision to distinguish rather than overrule Raich, which was foundational in the Eighth Circuit's reasoning in Howell. Congress's limitation on who must register, as well as the legislative history of SORNA, shows that § 16913 can "be sustained under the Necessary and Proper Clause as an *essential* component" of a comprehensive national system for the registration of sex offenders. Id. at 2592 (emphasis added); Howell, 552 F.3d at 716-17 (discussing the legislative history of SORNA). Therefore, as the Eighth Circuit held in Howell, the application of the registration requirement of § 16913 is a valid exercise of Congress's constitutional authority.

### III. Conclusion

For the reasons explained above, it is hereby

ORDERED that Defendant's Motion to Dismiss Indictment, Doc. 21, is denied.

Dated January 29, 2013

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE